13288

STUKES v. LIFE INSURANCE COMPANY OF VIRGINIA

(161 S. E., 478.)

*Messrs. Rufus Fant* and *Francis R. Fant,* for appellant,

*Mr. Frank P. Cave,* for respondent.

December 4, 1931.

The opinion of the Court was delivered by MR. JUSTICE STABLER.

It appears from the record in this case that in 1910 the defendant company insured the life of one Barney M. Stukes in the principal sum of $445; his mother, Ellen Stukes, being designated as beneficiary. The policy provided for the payment of a weekly premium of 25 cents, and contained, among other provisions, the following: "Paid-up Life Policy—If after the payment of the weekly premium for three or more years, this policy shall become void by reason of default in the payment of premiums, it will, without any action on the part of the insured, become paid up for a period of thirteen weeks from the date of said default, for an amount computed according to the table below. If, within said period, this policy, with its premium receipt book is surrendered to the company, the company will, on written application made on blank furnished by the company issue a non-participating paid-up life policy for said amount, on which no further premiums will be required."

No premiums were paid after November 28, 1921, and, after such default, neither the policy nor the receipt book was surrendered to the company, and no application was made for a paid-up life policy, and no policy was ever issued except the original one sued on in this case. The insured died in 1930, and this action was then brought in the Magistrate's Court by Mrs. Docia Stukes, his widow, who claimed that she was the beneficiary under the policy, for

the reason that about 1915 or 1917 Ellen Stukes, the original beneficiary, ceased to pay the premiums, and that thereafter the plaintiff paid them up to November, 1921. She claimed that the company was therefore due her, as paid-up insurance on the life of her husband, the sum of $100.00.

The defenses interposed were a general denial, forfeiture of the policy through default in the payment of premiums when due, and failure to make application for paid-up insurance as provided in the policy, and that the action was barred by the Statute of Limitations.

The case was heard by the magistrate, without a jury, who gave judgment for the plaintiff for $95.00. The defendant thereupon appealed to the Circuit Court on grounds substantially the same as set out in its exceptions on appeal to this Court. The matter was heard by his Honor, Judge Greene, who affirmed the judgment, but assigned no reasons in his order for so doing. The defendant now comes to this Court and imputes error to the Circuit Judge in sustaining the magistrate in his construction of the policy, in his alleged exercise of equity jurisdiction, in his admission of certain testimony, and in his holding that the action was not barred by the Statute of Limitations.

The respondent argues that the magistrate's construction of the policy was correct; that he did not exercise equity jurisdiction in reaching his conclusion, but rendered judgment in accordance with the testimony and applicable principles of law; that the testimony objected to was both competent and relevant; and that the Statute of Limitations has no application to an action of this kind.

Even if error was committed in the trial of the case, the appellant, in order to be entitled to reversal, must show that such error was prejudicial to its rights or influenced the magistrate in giving judgment for the plaintiff. With regard to appeal from inferior Courts to the Circuit Court, Section 669 of the Code of Civil Procedure of 1922 provides: "Upon hearing the appeal, the appellate

Court shall give judgment according to the justice of the case without regard to technical errors and defects which do not affect the merits."

In *Stanford v. Cudd*, 93 S. C., 367, 76 S. E., 986, ██ 987, the Court said: "In obedience to the statute, the Circuit Court might have concluded that the magistrate erred in refusing some or all of the defendant's requests, or in admitting some or all of the testimony objected to by defendant, but the Court might have thought, upon consideration of the case on the merits, that, notwithstanding such errors, the plaintiff was entitled to judgment; and as there was evidence which would have warranted such a conclusion, and as we cannot say that the judgment was affected or controlled by any error of law, it must be affirmed."

In line with the foregoing decision, our view of the case at bar is: Although, as we have stated, the Circuit Judge assigned no reasons in his order for affirming the judgment of the magistrate, we assume that, in considering the appeal, he had in mind the statute above quoted, and undertook to do substantial justice between the parties without regard to technical errors and defects not affecting the merits of the case. We also assume, as we properly may, that he went carefully into the whole matter, giving full consideration to the alleged errors complained of by the appellant, and, if found to be errors, their possible effect upon the merits of the case. From a very careful examination of the record, and of the questions involved in the appeal, we cannot say that the conclusion of the Circuit Judge was not based on meritorious grounds or that the judgment of the Court was in any way induced or affected by error of law.

The order appealed from is affirmed.

MR. CHIEF JUSTICE BLEASE and MR. JUSTICE CARTER concur.

MR. JUSTICE COTHRAN (dissenting): This action was

commenced in a Magistrate's Court, on April 9, 1931, for $100, which the plaintiff as a beneficiary claimed under a policy issued upon the life of her husband, Barney Stukes, dated in 1910, in the principal sum of $445. The premiums were 25 cents per week, payable in advance, on Monday of each week; they were paid from the date of the policy, in 1910, to November 28, 1921, about 11 years, at which time default occurred, and since that date nothing has been paid. The insured died in 1930.

The plaintiff claims that under the provisions of the policy the insured upon default was entitled to a paid-up policy for a conceded amount of $95, payable to her upon his death, which occurred nearly 10 years after default. Her contention is to be determined by a construction of the policy provisions.

Quoting from the transcript of record: "The policy provides that in the event of default in the payment of premiums within four weeks from the time same became due, it shall become void, and premiums forfeited, subject to the provisions and conditions of the Paid-up Life Policy provision and Cash Surrender Value provision."

The premium due November 28, 1921, not having been paid, the policy, according to the above provision, continued of force for four weeks, until December 23d, when the default became operative and the policy void, subject to the provision for a paid-up policy. I do not perceive the slightest ambiguity in that provision. It seems perfectly plain that, the default having been consummated on December 23, 1921, the insured was entitled, without any action on the part of the company, to a paid-up policy, according to the table, for a period of thirteen weeks; that, if the insured should die within that period, the paid-up policy would be cashed; but that, if within that thirteen-week period he should comply with the regulations required, the paid-up policy would be good as long as he lived and be cashed at his death.

The provision was as follows: "Paid-Up Life Policy—If, after the payment of the weekly premium hereon for three or more years, this Policy shall become void by reason of default in the payment of premiums, it will, without any action on the part of the Insured, become paid-up for a period of thirteen weeks from the date of said default, for an amount computed according to the table below. If within said period, this Policy, with its Premium Receipt Book is surrendered to the Company, the Company will, on written application made on the blank furnished by the Company issue a Non-Participating Paid-Up Life Policy for said amount, on which no further premiums will be required."

It is conceded that this requirement was not complied with. It appears to me, therefore, that the plaintiff has no claim whatever under the policy.

In 3 Joyce, Ins. (2d Ed.), § 1184, it is said: "The stipulation of the policy must determine when the right of election must be exercised. The policy may contain no limitation as to the time of election, but may provide only that upon default in the payment of the premiums the party will be entitled to a paid-up policy, or it may stipulate for compliance with certain conditions, such as surrender and demand within a limited specified time, or that demand and surrender must be made while the policy is in force."

And at Section 1185: "If it is expressly stipulated that the policy must be surrendered and receipted in full within a specified time after default in payment of a premium to entitle the assured to a paid-up policy, such provision must be complied with, and the option must be exercised within the time designated, otherwise it is lost, for time is of the essence of the contract"—citing cases from United States Supreme Court, Alabama, Georgia, Illinois, Kentucky, Maine, Mississippi, Missouri, New Jersey, Pennsylvania, Texas and Virginia. See notes to *Blume v. Pittsburgh Life & Trust Co.* (Ill.), 51 L. R. A. (N. S.), 1044.

I think, therefore, that the judgment should be reversed and the complaint dismissed.

Mr. Justice Bonham concurs.