12840

WARD *ET AL.* v. ATLANTIC COAST LINE R. CO.

(151 S. E., 904)

May, 1929.

*Mr. Ashton H. Williams,* for appellant,

*Mr. Jack Dalziel,* for respondents.

February 20, 1930.

The opinion of the Court was delivered by Mr. Chief Justice Watts.

For the reasons assigned by Judge Shipp, it is the judgment of this Court that the judgment of the circuit Court be affirmed.

MESSRS. JUSTICES BLEASE, STABLER, and CARTER concur.

MR. JUSTICE COTHRAN dissents.

MR. JUSTICE BLEASE (concurring): Section 669 of Volume 1 of the Code of 1922, relating to appeals to the circuit Court from the Courts of magistrates, contains this provision: "Upon hearing the appeal, the appellate Court shall give judgment according to the justice of the case, without regard to technical errors and defects which do not affect the merits."

It was decided in *Fraser v. A. C. L. Railroad Company,* 93 S. C., 272, 76 S. E., 609: "On appeal from magistrate's judgment, the appellate Court shall give judgment according to the justice of the case without regard to technical errors."

"Under Code Civ. Proc., Sec. 407 (now Sec. 669, Vol. 1, Code 1922), a case on appeal from a magistrate should be considered by a circuit Court upon its merits, and judgment there given according to the justice of the case, without regard to technical errors and defects." *Feinstein v. Politz,* 103 S. C., 238, 87 S. E., 1005.

Also, it is well established in this State that this Court has no right to question the findings of fact in a magistrate's Court, approved by the circuit Judge on appeal, when there was any evidence whatever, however slight it may have been, tending to prove the issues involved.

We cannot expect our magistrates, usually untrained in the technicalities of the law, and unfamiliar with the orderly manner of instructing juries, to deliver their charges without some little confusion. In fact, the jurors they instruct often know as much about the law as the magistrates do. The conclusion of the circuit Judge, who has the right to review all the facts, on appeal from a magistrate's Court, for the purpose of determining the justice of the case, that the parties have had a fair trial in the inferior Court, and that substantial justice has been done, should be given more weight in this Court than almost anything else in the consideration of appeals in cases originally heard in the Courts of magistrates.

See the recent case of *Naufal v. Gergel,* 136 S. C., 366, 134 S. E., 463, which strongly supports the views herein expressed.

Messrs. Justices Stabler and Carter concur.

Mr. Justice Cothran (*dissenting*): This is an action for damages on account of the loss of two head of cattle transported from Estill, S. C., to Lake City, S. C. The Seaboard Air Line was the initial carrier which issued the bill

of lading; the Coast Line being a connecting carrier to destination. The plaintiffs claimed damages in the sum of $78.-94, the alleged value of a steer and a yearling. Upon the trial before a magistrate the defendant admitted its liability in the sum of $17.72 for the loss of the yearling and offered to allow judgment therefor, contesting its liability for the loss of the steer upon the ground that the death of the animal was due to the inherent vice, weakness, or natural propensity of the animal and to the negligence of the owner or agent in improperly loading the stock several hours prior to the scheduled arrival of the train which was to carry them.

The defendant relied upon the following provision in the bill of lading:

"Sec. 1. (a) Except in the case of its negligence proximately contributing thereto, no carrier or party in possession of all or any part of the livestock herein described shall be liable for any loss thereof or damage thereto or delay caused by the act of God, the public enemy, quarantine, the authority of law, the inherent vice, weakness, or natural propensity of the animal, or the act of default of the shipper or owner, or the agent of either, or by riots, strikes, stoppage of labor or threatened violence.

"(b) Unless caused by the negligence of the carrier or its employees no carrier shall be liable for or on account of any injury or death sustained by said livestock, occasioned by any of the following causes; overloading, crowding, one upon another, escaping from cars, pens, or vessels, kicking or goring or otherwise injuring themselves or damage to or obstruction of track or other causes beyond the carrier's control."

Upon the trial of the case counsel for the plaintiffs preferred a request to charge as follows: "That there are two exceptions to the common law rule of a common carrier for the carriage of livestock. One is the inherent vice of the animal, and the natural propensity of the animal, and that under the law the presumption of negligence rests with the

Railroad Company and it is up to the carrier to show that they were not negligent in handling the cattle in question."

The magistrate responded: "I think that would be right."

Counsel for the defendant preferred a request based upon the provision of the bill of lading above quoted: "If you find that the death of the animal in question was caused by the inherent vice of any of the animals or was occasioned by any of the other causes mentioned in the Livestock Contract, defendant would not be liable."

The magistrate responded: "If I should charge that there would be no use to bring suit for damages."

The magistrate charged at the request of counsel for the plaintiff: "* * * If the Railroad Company permitted the cattle in question to be loaded a longer period of time than two hours before the scheduled departure of the train, without the written consent of the consignee or consignor that that would make the Railroad Company negligent *per se*."

The jury in the magistrate's Court returned a verdict in favor of the plaintiffs for the full amount of the claim, $78.94, and the defendant appealed to the circuit Court. The appeal was heard by his Honor, Judge Shipp, who sustained the judgment of the magistrate's Court in the following order:

"This matter comes before me on an appeal from the Court of Magistrate W. J. M. Knight, on exceptions set out in the Notice and Grounds of Appeal. One of the defendant's main grounds of appeal is that it alleges error on the part of the magistrate in refusing to charge the jury the stipulation on the back of the bill of lading referring to cases in which the carrier would not be liable. I am of the opinion that, grouped together as they were, the magistrate was right in refusing to charge the stipulation contained in the bill of lading. It appears, however, that the magistrate did charge or stated to the jury that the company would

not be held liable for death or loss resulting from the inherent vice or nature and propensity of the animals, which is the only case in which the common carrier will be absolved from liability for a negligence. There was ample evidence to sustain the verdict and judgment of the Court, and it is hereby:

"Ordered and adjudged, that the appeal be dismissed and the verdict and judgment of the magistrate's Court affirmed."

Upon the judgment entered upon this order the defendant appeals to this Court upon exceptions which fairly present the following propositions:

1. That the carrier should have been held exempt from liability under the provisions of the bill of lading or live stock contract above quoted.

2. That it was error in the magistrate to charge that it was negligence *per se* for the carrier to permit the loading of the cattle in excess of two hours before the scheduled departure of the train which was to carry them.

(There are other exceptions which I do not think it necessary to consider.)

The undisputed facts are these:

On October 12, 1927, plaintiffs, through their agent, J. J. Lamb, bought from W. C. Johnson 30 head of cattle in the vicinity of Estill, S. C. A car in which these cattle were to be loaded at Estill for shipment to Lake City, S. C., was ordered by W. C. Johnson on October 10, 1927, to be placed on October 12th. On October 12th there was only one local freight train passing Estill over the lines of the Seaboard Air Line Railway Company in the direction of Denmark, to which point these cattle were to be transported by the Seaboard Air Line Railway Company, and there delivered to the Atlantic Coast Line Railroad Company for transportation to Lake City, S. C. This freight train was to pass Estill at 11:05 a. m., and Mr. Johnson was urged to load

the cattle in time to move on that train. He did not do so, due to the fact that the representative of the purchaser did not arrive at Estill until after that train had passed.

The only other train on which these cattle could be moved was due to arrive at Estill at 12:41 a. m., on the 13th of October, 1927. This situation was explained in detail to Mr. Johnson, the seller of the cattle, and to Mr. J. J. Lamb, the representative of the purchaser, and was clearly understood by them. It was also explained to them that if they loaded the cattle at any time on the 12th of October for movement on this train they would remain at the risk of the shipper until the arrival of the train. With this situation definitely and clearly explained to them, they elected to load the cattle in the afternoon of October 12th. It may be noted that these cattle were not loaded by the railroad company, or its agents, but by the shipper and the representative of the consignee, the agent of the railroad company advising against the loading at that time, and submitting to it only upon the distinct understanding that the shipper assumed the risk of injury resulting therefrom. The train which was due at 12:41 a. m., on the 13th, did not reach Estill until some time about daylight, the cattle in the meantime having remained loaded in the car from the afternoon before. When it arrived and was preparing to attach the stock car, it was found that one of the animals which had become entangled in the chain by which it was fastened was down and practically dead; the chain had to be cut with a cold-chisel to release it; at Denmark, the connection with the Coast Line, the animal was found dead and removed from the car, the Coast Line of course never having received it.

His Honor, Judge Shipp, as appears from his order, held that the magistrate was not in error in refusing to charge in reference to the exemption by reason of the provisions of the live stock contract, because the clause was grouped with another clause. An examination of the exempting clauses

(there were two), as above set forth, shows that the exemption claimed was contained in both of them. I can see no basis for the objection that they were "grouped together," and think that the request based upon both should have been given by the magistrate.

His Honor was in error, I think, in supposing that the magistrate had sufficiently charged the proposition contended for by the defendant. The foregoing extracts show that his first impression was completely annihilated by his very positive statement which has been quoted: "If I should charge that, there would be no use to bring a suit for damages."

As to the other proposition, I do not think that the shipper is in a position to charge a violation of the law of Section 4896, Civ. Code, 1922, when he loaded the stock himself, knowing that it would be at least seven hours before the train was due and over the remonstrance of the carrier's agent.

I think that the judgment should be modified, and the case remanded to the circuit Court with direction to enter a judgment in favor of the plaintiff for $17.72 for the loss of the yearling.