13694

HAWKINS v. NORTH CAROLINA MUTUAL LIFE INS. CO.

(170 S. E., 883)

*Messrs. Carlisle, Brown & Carlisle,* for appellant, ▮

*Mr. A. C. Platt,* for respondent, ▮

September 22, 1933.

The opinion of the Court was delivered by MR. JUSTICE CARTER.

This suit by Pollie Hawkins, as plaintiff, against the defendant, North Carolina Mutual Life Insurance Company, was commenced September 29, 1932, in the Court of Magistrate J. L. Lancaster, at Spartanburg, S. C., for the recovery of the sum of $75.00, alleged balance due the plaintiff as beneficiary under a certain policy of insurance issued by the defendant, February 9, 1931, upon the life of the plaintiff's father, Dan Smith, who died February 4, 1932. The face value of the policy appears to be $100.00, but the defendant contends that under certain provisions contained in the policy, when applied to the facts of the case, the plaintiff

was only entitled to receive $25.00, which sum the defendant alleges it has paid, and denies owing any amount to the plaintiff.

Issues being joined, the case was tried before the said magistrate and a jury November 7, 1932, resulting in a verdict for the plaintiff for the sum of $75.00, and from the judgment entered thereon the defendant appealed to the County Court for said County of Spartanburg. The judgment in the case having been affirmed by that Court, the defendant has appealed to this Court.

The allegations of error imputed to the County Judge, in affirming the judgment in the magistrate's Court, are presented under three exceptions, the first and second of which, reading as follows, will be considered together:

"1. It is respectfully submitted that his Honor, Judge of the County Court, erred in failing to reverse the judgment of the Magistrate's Court for error in admitting the testimony of plaintiff and other witnesses to the effect that the agent, J. J. Jones, had represented to plaintiff at the time of the purchase of the policy by her that it was in full benefit for the sum of one hundred dollars on its date, it being respectfully submitted that it was error to permit oral proof to interpret or vary the terms of the written instrument in the absence of ambiguity or fraud.

"2. It is respectfully submitted that his Honor, Judge of the County Court, erred in failing to reverse the judgment of the Magistrate's Court for error in holding that the complaint alleged fraud, the allegations of the complaint being insufficient thereto."

The provision in the policy upon which the defendant relies to exempt it from liability in excess of the sum of $25.00 reads thus: "If the death of the insured occurs during the first 12 months from date of this policy resulting from consumption, tuberculosis, pellagra, disease of the heart or blood vessels, nephritis or disease of the kidneys, cancer, paralysis or apoplexy, one-fourth of the amount will

be paid which would be payable under the policy conditions for death resulting from any other natural cause."

It is the contention of the defendant, as alleged in its answer, that the death of the insured resulted from nephritis, and within the first twelve months from the date of the policy; and therefore contends that it is only liable for the sum of $25.00; that is, one-fourth of the amount of the policy, which sum it alleges it paid. The plaintiff, it appears, made an assignment of the benefits of the policy to the undertaker for the funeral expenses of the insured and the said undertaker, by virtue of the assignment, received the said sum of $25.00 from the defendant. On the trial of the case the plaintiff introduced, over the objection of the defendant, testimony to the effect that the defendant's agent, who delivered to the plaintiff the policy in question, at the time of such delivery, collected from the plaintiff premiums four weeks in advance thereon, and at the time stated to the plaintiff that the policy was "in full benefit." It further appears from the testimony that the plaintiff relief upon this representation, and that such representation induced her to accept the policy and pay the premium thereon. In this connection we may state that while it appears from the record that the plaintiff was able to read, a reasonable inference to be drawn from the testimony is that her education was limited and her station in life was by no means the best. Another reasonable inference to be drawn from the testimony is that she was unable to cope with the defendant's said agent who sold and delivered to her the policy involved. There was also testimony to the effect that the said agent of the defendant, who delivered to her the policy in question, had constantly called at her home for a number of years in connection with the sale of other policies to her on the life of her children and for the purpose of collection of premiums thereon, having sold to her seven or eight policies, and, it seems, had won her confidence. In our opinion, the inference may reasonably be drawn from the testimony

that in purchasing the policy involved the plaintiff trusted the defendant's said agent and relied upon his statement as to the meaning and value of the same. We therefore think it is proper to admit in evidence the testimony under consideration. We do not agree with appellant's position that the complaint contained no allegations constituting a basis for the introduction of the testimony under consideration. In our opinion, the necessary allegation appears in the complaint. We find an allegation therein reading as follows: "That at the issuance of said policy, the defendant through its duly authorized agent represented to this plaintiff that said policy was in full benefit, and she believed and relied upon said representations."

This allegation, considered in connection with all the other facts alleged and in the light of the surrounding circumstances, constitutes sufficient notice to the defendant that the testimony objected to, or similar testimony, would be offered by the plaintiff at the trial of her case. Exceptions 1 and 2 are therefore overruled.

Exception III. "It is respectfully submitted that his Honor, Judge of the County Court, erred in failing to reverse the judgment of the Magistrate's Court for error in overruling defendant's motion for a directed verdict on the grounds stated in the record, the proof showing settlement in full of the claim under the policy, and there having been no tender back to the company by the plaintiff of the amount of said settlement."

At the close of the testimony on the trial of the case in the Magistrate's Court the defendant moved for a directed verdict for the defendant on the ground that the proof was that the claim involved had been settled and that there was no allegation or proof of fraud; and, further, on the ground that there had been no tender back to the company as a prerequisite to bring suit. The magistrate having overruled the motion, an appeal was taken to the County Judge who affirmed the judgment in the Magistrate's Court, thereby sus-

taining the ruling of the magistrate on this motion. An appeal having been taken to this Court from the judgment below, the question is now presented before us under Exception 3, above quoted. In support of the allegation of error that the Court erred in failing to direct a verdict because of the plaintiff having not offered to return to the defendant the $25.00 referred to above, which was paid to the undertaker, our attention is called to the case of *Lawrence v. Durham Life Insurance Company,* 166 S. C., 203, 164 S. E., 632. It is a recognized principle by the Courts of this State that, where a compromise is made between the parties regarding a claim involved, and fraud is charged by one of the parties to the transaction against the other in procuring such compromise, in order to maintain an action to set the settlement aside and procure judgment for an additional amount, the amount so paid as a compromise must first be returned or offered to be returned to the other party. But in our opinion the case at bar does not fall within this rule. The facts of the case present a different situation. So far as the record discloses, no compromise settlement was effected between the parties in this case, and certainly no release was executed. It is true that, pursuant to an execution of an assignment to the undertaker for burial expenses of the insured, a check for the sum of $25.00, which was made payable to the plaintiff, was indorsed by her and delivered to the undertaker, which the undertaker collected. We do not think that this check could be considered a release for the entire claim involved under the policy. While we find at the top of this check the following wording: "In settlement of WPL. C. Claim 590910 $25.00 Dan Smith S. C."—this standing alone does not, in our opinion, constitute a release, and we do not think the record discloses an intention on the part of the plaintiff to make her indorsement on the back of this check a release of the total claim involved under the policy. Under our view of the case, the action should be re-

garded as an action to collect a balance owing on a contract, and we think the same should be maintained.

The exceptions are overruled, and the judgment of the lower Court affirmed.

MR. CHIEF JUSTICE BLEASE and MESSRS. JUSTICES STABLER and BONHAM concur in result.

MR. CHIEF JUSTICE BLEASE (concurring in result): Briefly stated, my reasons for concurring in the conclusion of Mr. Justice Carter's opinion, that the judgment appealed from should be affirmed, are as follows:

The policy of insurance provided that if the insured died "during the first twelve months from date of this policy" from either one of many diseases mentioned, nephritis included, only the sum of $25.00, and not the total amount of insurance, $100.00, would be paid. The company defended on the ground, that the insured died a few days before the expiration of the twelve months' period from nephritis, a disease of the kidneys; that $25.00, the only sum due under the terms of the policy, had been paid. The only evidence I find to sustain the defense was that of a physician, who had treated the insured for just a few days. He testified that, while he had given a certificate that the insured had died of nephritis, he could not say positively that such was the case; that he only treated the insured about five days, the last visit being two days prior to his death; that only by a urinalysis test, or a post mortem examination, could he have determined that death was caused by nephritis, and that neither of these examinations was made. He did not see the insured the day he died, or the body after death.

In his report to the County Court on the appeal, Magistrate John L. Lancaster said: "The sole question before the Court was a question of fact: whether or not the insured died from a disease excepted from the policy within twelve months from its date?" The burden to sustain the defense was, of course, on the insurance company.

The magistrate properly held that, under the evidence submitted, the question of fact was one for the jury.

It is my opinion that the complaint did not charge any fraudulent act on the part of the insurance company, or any of its agents. Neither was there ambiguity in the language of the policy. So the testimony as to the representations of one of the agents as to the terms of the policy was improperly admitted. But this error in the magistrate's Court, after the affirmance of the judgment of that Court by the County Court, is not sufficient for this Court to reverse the judgment. Section 804 of the Code, touching appeals from Courts of magistrate to the Circuit Court or County Court, provides : "Upon hearing the appeal, the appellate Court shall give judgment according to the justice of the case, without regard to technical errors and defects which do not affect the merits."

The erroneous admission of evidence in a trial before a magistrate does not require the appellate Court to reverse the judgment, but the appellate Court is to give judgment according to the justice of the case. *Naufal v. Gergel,* 136 S. C., 366, 134 S. E., 463.

The County Judge, as he stated in his order, feeling "that the judgment should stand," affirmed it on "the entire record in this case." Clearly, he meant that his judgment was given "according to the justice of the case, without regard to technical errors and defects which do not affect the merits." The evidence in the trial and the report of the magistrate warranted that conclusion.

MESSRS. JUSTICES STABLER and BONHAM concur.